**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

-----------------------------------------------------------X

COLLEEN PETERS,

Plaintiff, Case No.: 8:25-cv-443-BCB-mdn

-v.-

Hon. Todd Blanche, in his official capacity as Attorney General of the United States, DEPARTMENT OF JUSTICE, and Kash Patel, in his official capacity as Director of the FEDERAL BUREAU OF INVESTIGATION,

Defendants.

-----------------------------------------------------------X

**PLAINTIFF'S ATTORNEY AFFIRMATION IN SUPPORT OF MOTION**

I, Denis P. McAllister do hereby declare the truth of the following under penalty of perjury:

1. That I am attorney of record for Plaintiff in the instant Title VII action alleging Sex-based discrimination against Defendant Department of Justice (DOJ) and her former employer Defendant Federal Bureau of Investigation (FBI). The complaint in this case alleges hostile work environment (HWE) as well as wrongful termination because of her Sex: Female. (ECF#8).

## I. Summary of the Cause of Action and Relevant Pleadings.

2. Because reference has to be made to some items that are <u>not</u> contained in this matter's CM/ECF system I am required to refer Your Honor to external evidence containing relevant, factual information in order for this Court to properly rule on the instant motion. See, NECivR 7.1(a)(2).

3. Issue was joined in this matter on November 17, 2025, when Defendants filed their answer to the Plaintiff's Title VII based complaint asserting general denials and raising six (6) affirmative defenses. (ECF#16).

4. In its fourth affirmative defense Defendants asserted that they did <u>not</u> treat individuals similarly situated to Plaintiff but not members of Plaintiff's Sex (Female) differently from this Plaintiff. See, page 2 of Defendant's answer (ECF#16) (emphasis added).

**II. Development of Evidentiary Record Through Discovery Process.**

5. On January 5, 2026 Plaintiff served her FRCP 26(a)(1)(A) initial disclosures (hereinafter Plaintiff's Initial Disclosures) on Defendants. In Plaintiff's Initial Disclosures she listed individuals with information about Plaintiff's claims and Defendants' claimed defenses, inter alia, eighteen (18) current DOJ employees, as well as three (3) former DOJ employees.

6. Identified by proper name, amongst the "current DOJ employees" in Plaintiff's Initial Disclosures were special agent Seena Ali Soheilian (SA Soheilian), and special agent Patrick Manion (SA Manion); both of whom were assigned with Plaintiff to the Omaha Field Office Joint Terrorism Task Force (OM-5). At overlapping times, both SA Soheilian and SA Manion served as probationary agents, as did Plaintiff under the same OM-5 supervisor: Kari Gallagher (Female).

7. Amongst FBI management Plaintiff also identified supervisory special agent Kari Gallagher (former SSA Gallagher)[1], assistant special agent in charge Willie Johnson (ASAC Johnson) and special agent in charge Eugene Kowel (SAC Kowel), each of whom was believed to be still employed at the Omaha Field Office for the FBI at Initial Disclosure stage.

8. Also listed in her Initial Disclosures as "former DOJ employee" was special agent Michele Stevenson, a criminal investigator whose primary duties were not of a criminal investigative nature but involved Omaha oversight of the new agent development program (NADP) as the Omaha NADP Coordinator (NAPD/C). The roles of the above named individuals in paragraphs #6

[1] Plaintiff had a lack of information at the time of her Initial Disclosures whether or not SSA Gallagher held the title and grade of supervisory special agent. As of the date of this filing Plaintiff has information from SSA Gallagher herself that she has since been demoted out of her supervisory role, while retaining SSA pay grade.

through #8, inclusive will become manifest in this affidavit, below.

9. On February 5, 2026 Plaintiff served her written discovery requests on Defendants' attorney of record Amanda Brown, Esq. via electronic service (i.e., email) at her address in the notice of appearance on file in CM/ECF.

10. On March 27, 2026 Defendants were granted an extension of an additional 60 days within which to respond to Plaintiff's written discovery requests. (ECF#33).

11. On May 6, 2026 Defendants served Plaintiff with their responses to Plaintiff's request for admissions, request for production, and answers/responses to written interrogatories. Annexed hereto as "Exhibit A" are Plaintiff's Rule 33 interrogatories[2] along with Defendants' initial responses to Plaintiff's interrogatories. Plaintiff identified several perceived deficiencies with respect to Defendants' interrogatory responses.

12. On May 22, 2026, after a series of email communications with Defendants' attorneys placing them on notice of a discovery dispute, Plaintiff served her first Rule 37(a)(1) Conferral Memo on Defendants' attorneys. Annexed hereto as "Exhibit B" is her initial Conferral Memo.

13. Plaintiff's initial Conferral Memo highlighted five total objections to interrogatory responses lodged by Plaintiffs. After conferral, today the only remaining disputed interrogatory response is Defendants' response to Interrogatory #31. Plaintiff submits that Defendants #31 response is evasive.

14. On May 28, 2026, Defendants served a response in letter form to Plaintiff's First Conferral Memo (Reply Letter). Annexed hereto as "Exhibit C" is a copy of Defendants' Reply Letter. In its Reply, as pertains to disputed interrogatory #31 Defendants addressed the query under a label

---

[2] Plaintiff's number of interrogatories *exceeded* the permissible limit on interrogatories. However, after conferral between the parties a number of Plaintiff's interrogatories were verbally withdrawn during communication(s) with Defendants' counsel, after it was brought to the undersigned's attention.

that reads "AREAS WHERE THE UNITED STATES IS WILLING TO SUPPLEMENT".

15. In Defendants' Rule 37 Reply Letter addressing Interrogatory #31 Defendants stated:

> "We are reviewing your concerns and will clarify the distinctions between these interrogatories where appropriate. The most logical explanation is that some new agents have a formally documented FTA assignment; others rely on a senior agent POC model, especially when staffing structures shift.
> As requested, we will obtain individual verifications from the personnel with knowledge. Defendants are reaching out to these individuals and there is no way to know their availability to review and sign verifications. So, there could be a bit of a time delay given inherent unavailability issues in the summer months". See, Exhibit C, at the 2nd page.

16. On June 25, 2026 Plaintiff served her Second Rule 37(a)(1) Memo on Defendants. Annexed hereto as "Exhibit D" is Plaintiff's Second Conferral Memo. See, Exhibit D, at pages 6 through 9, in which the substance of the deficiency of Defendants' response to #31 is addressed. Plaintiff's explained the substance of Defendant's Rule 37 Reply Letter was not plausible and gave reasons for the same.

17. On July 7, 2026 Defendants served supplemental and amended responses to Interrogatories #1, #2, #19 and #30, but did **not** supplement or amend Interrogatory #31.

18. Communications between respective counsel continued during the summer months over parties' respective "discovery disputes" to satisfy the conferral requirements requisite to filing any discovery motions. On July 10, 2026 Magistrate Michael D. Judge Nelson (Magistrate Nelson) held a telephonic conference call following an email request from Defendants' counsel, pursuant to NECivR 7.1(a)(k) to address the parties' discovery dispute. (ECF#59).

19. On August 28, 2026 Defendants sought intervention of Magistrate Nelson during an in session oral examination by Plaintiff of Special Agent in Charge Eugene Kowel. (ECF#66).

20. On September 8, 2026 Plaintiff served a Third FRCP 37(a)(1) Conferral Memo on

Defendants addressing Plaintiff's continued objection to Defendants' response to #31 of her interrogatories. Annexed hereto as "Exhibit E" is a copy of the Third Conferral Memo.

21. The Case Progression Order in this matter contained a Status Conference Hearing date (status conference) for September 9, 2026. (ECF#28). During the status conference Plaintiff renewed her objection, inter alia, to Defendants' evasive response to Interrogatory #31.

22. On September 10, 2026 Magistrate Nelson granted Plaintiff leave to file a single motion with regard to Defendants' verification of written discovery responses and Defendants' response to Interrogatory #31.

**III. Defendants' Evasive Response to Interrogatory #31.**

23. In order to provide context to the Court regarding why Defendants #31 response is evasive it is necessary that interrogatories #29 and #30 be reviewed because they address an identical line of inquiry to two other Omaha probationary agents from OM-5; (#29 is directed at Plaintiff and #30 is directed at SA Patrick Manion). See, Exhibit A at pages 15-17.

24. Below are Interrogatories #29 and #30, with Defendants' responses to the same:

> **INTERROGATORY NO. 29:** Identify the name of Plaintiffs (sic) assigned FTA after Special Agent Michael Schmitt (her prior FTA) was removed from OMFO[3] office space in fall of 2022 and prior to Plaintiff's termination on April 11, 2023, and identify the date on which the successor FTA was assigned to Plaintiff and the dates in which the 1811[4] served as Plaintiffs (sic) FTA up to her date of termination.
>
> **RESPONSE:** Special Agent Mike Schmitt served as Complainant's first Field Training Agent. After a reasonable search through records the FBI cannot readily identify any additional FTA assigned to Plaintiff.
>
> **INTERROGATORY NO. 30:** Identify the proper name and Sex of the FTA(s) assigned

[3] "OMFO" is an acronym for the Omaha Field Office for Defendant FBI.
[4] "1811" is the Office of Personnel Management occupational code used for criminal investigators, agents.

to SA Manion during his 18-month NAT[5] period at OMFO and the dates from which the individual(s) served as Patrick Manion's FTA.

**RESPONSE:** Special Agent Matt Florence (male) served as SA Manion's Field Training Agent during portions of SA Manion's NAT period. Based on information presently available, SA Florence served in that role from approximately October of 2022 through April of 2024. Defendants reserve the right to supplement this response pursuant to Federal Rule of Civil Procedure 26(e).

25. From a review of Defendants' Interrogatory responses #4 and #5 (page 3 of Exhibit A) it is clear that SA Manion always had an FTA during his entire time assigned at OMFO. Also, SSA Kari Gallagher assigned SA Florence as his FTA. Annexed hereto as "Exhibit F" is a copy of relevant portions of SA Manion's 3/5/2024 deposition transcript which corroborate the above representation.

The gap in time from June 5, 2022 until October of 2022 (observed from Defendants' Interrogatory responses to #4 and #5 found in Exhibit A) represent SA Manion's time training down at the FBI academy when there is no FTAs assigned. See, also Exhibit F, at page 12, lines 2-5, 10-21; page 13, lines 7-19[6]; page 14, lines 14-22 ("2020" is a typo and should reflect <u>2022</u>); page 15, lines 1-6 and 14-21.

26. Below is disputed Interrogatory response #31:

**<u>INTERROGATORY NO. 31:</u>** Identify the proper name and Sex of the FTA(s) assigned to SA Soheilian during his 18-month NAT[7] period at OMFO and the dates from which the individual(s) served as SA Soheilian's FTA.

**RESPONSE:** To the best of SA Soheilian's recollection, SSA Jacob Foiles (male) served as FTA for SA Soheilian from approximately April-May 2024. SSA Foiles was unable to confirm the dates he served as SA Soheilian's FTA. SSA Foiles stated that he and SA

[5] "NAT" is an acronym for New Agent Trainee; a label used to refer to probationary agents.
[6] Reference to "Squad 5"in SA Manion's testimony is OM-5, the Omaha JTTF.
[7] "NAT" is an acronym for New Agent Trainee; a label used to refer to probationary agents.

Florence were noted as being FTAs for SA Soheilian's New Agent Development Program completion electronic communication. However, according to SA Florence, he was never SA Soheilian's FTA "on paper". Rather, as the senior agent, he was the POC to answer questions that new agents, including possibly Soheilian, would have.

27. Defendants' response to #31 is evasive and does not reflect the more straight-forward responses provided to #29 and #30. In fact, Defendants are in possession of evidence that was shared with them by Plaintiff's Initial Disclosures on 1/5/2026 which demonstrate that the substantive response to #31 cannot be accurate and/or is incomplete. Annexed hereto as "Exhibit G" is a copy of relevant portions of the FBI New Agent Development Program Policy Guide "NADPPG". Also, annexed hereto as "Exhibit H" is a copy of relevant portions of the New Agent Development Program Handbook "NADPH".

28. The NADPPG highlights the respective roles for all individuals in the field office involved in NAT[8] successful completion of their probationary period. Page #3 of Exhibit G identifies ten (10) responsibilities of the FTA, while pages #3 and #4 define the responsibilities of the SSA and NADP/C in the successful development of a probationary agent. The first responsibility of the SSA is to assign an FTA to each NAT, in coordination with the field office NADP/C. See, Exhibit G, at page #3 at the 1st bullet.

29. Some of the responsibilities of the NADP/C are management of the NADP in the field office, as well as organizing orientation for each new FTA in the field office to familiarize the FTA with the responsibilities and expectations of the role. See, Exhibit G, at page #4.

30. A further tool used by the FBI is the NADPH (Exhibit H), which describes the NAT Program's objectives during the 18 months that the probationary agent spends in the field. See Exhibit H at pages 1-3. Along with a statement of the objectives of the NAT Development

[8] In written policy NAT title will appear as "NA" for new agent and the NADPG/C position as Program Manager.

Program are restrictions on who can serve in the important role of FTA for probationary agents.

31. The role of the SSA relative to assignment of the NAT's FTA is spelled out in the NADPH:

> "An SSA coordinates an NA's work assignments to ensure the NA is afforded every opportunity to develop throughout the program. An SSA is also responsible for selecting an FTA to pair with the NA, with input from the field office's NADP/C. The ideal ratio 1:1. Absent extraordinary circumstances, no FTA should be assigned more than two NAs simultaneously. Throughout the NADP, an SSA should monitor the NA and FTA pairs in the squad……………………………………………………………………………………
> During the NADP, an SSA should reassign NAs to another FTA if the initial FTA becomes the subject of an ongoing OPR or EEO investigation……………………………………"

See, Exhibit H at page #11.

## IV. Defendant FBI Deviation from FBI Policies and Practice.

32. On August 7, 2026 former OM-5 SSA Gallagher was deposed in this District Court action. Annexed hereto as "Exhibit I" is a copy of relevant portions of SSA Gallagher's deposition transcript along with her errata sheet.

33. SSA Gallagher arrived as the OM-5 supervisor in September of 2022 and her chain of command was ASAC Johnson as her first-line supervisor and SAC Kowel as her second-line supervisor. See Exhibit I at page 22, lines 11-14 and line 22; page 23, lines 1-5.

34. When asked about Plaintiff's FTA on 8/7/2026, SSA Gallagher testified that upon her arrival at (Omaha) in September of 2022 SA Michael Schmittt (FTA Schmitt[9]) was Plaintiff's assigned FTA and that NADP/C Stevenson tracks that information. See Exhibit I at page 38, lines 16-22; and page 39; at lines 1-12.

35. Also, at her 8/7/26 deposition SSA Gallagher acknowledged that during the fall of 2022 she became aware that FTA Schmitt was placed under administrative investigation and "walked

[9] In the deposition transcript FTA Schmitt's last name is misspelled. See Exhibit H errata sheet at pages numbered 309 and 310.

out"[10] of OMFO and that she does not recall taking any steps to assign Plaintiff a new FTA. See Exhibit I at page 39, lines 19-22; page 40, lines 1-9.

36. When asked about FTA assignments for Male probationary agents Manion and Soheilian SSA Gallagher testified on August 7, 2026 that she assigned SA Matt Florence as SA Manion's FTA and after SA Soheilian arrived in Omaha, SSA Gallagher assigned SA Mike Martin (SA Martin) as Soheilian's FTA. See Exhibit I at page 40, lines 10-22; page 41, lines 12-15.

37. Defendants' verified response to Plaintiff's interrogatory #31 does not correspond with the 8/7/2026 oral testimony of SSA Gallagher, then OM-5 supervisor. SA Mike Martin's name is not mentioned in Defendants' response to #31. SSA Gallagher is a current employee of the FBI and would be in a position to answer this disputed interrogatory #31.

38. On March 1, 2024 NADP/C Stevenson was deposed during the Equal Employment Opportunity Commission administrative process and testified about the FBI New Agent Development Program, her role, as well as her oversight of the development of NATs in OMFO. Annexed hereto as "Exhibit J" is a copy of relevant portions of NADP/C Stevenson's 3/1/2024 deposition transcript. See Exhibit J at page 40, lines 17-22; page 41, lines 1-6; 12-22; page 42, lines 1-22.

39. NADP/C Stevenson testified that it has always been FBI policy to require NATs coming out of Quantico (Basic Agent Training) to be assigned an FTA throughout their probationary period and that responsibility of assignment of the FTA lies with the SSA. See Exhibit J, at page 46, lines 10-22; page 47, lines 1-17.

40. At her 3/1/2024 deposition NADP/C Stevenson indicated that FTA assignments for

[10] "Walked out" is FBI parlance for someone placed under OPR investigation and escorted out of the FBI office space. It is not subject to dispute that once placed under OPR investigation, the agent's duties are stripped.

probationary agents came to her attention (from SSAs) by phone call or email and that she maintained those FTA assignments in a Microsoft Excel spreadsheet. See Exhibit J at page 48, lines 19-22; page 49, lines 1-3, 9-17.

**V. Defendants on Notice of Plaintiff's Assertion of FTA Assignment Failure.**

41. Although Plaintiff's complaint in this cause of action (ECF#8) does not assert that Defendants' failure to assign her a replacement FTA after the loss of SA Schmitt constituted a "discreet act" of discrimination as part of her HWE claim, in her initial EEO statement Plaintiff identified this "failure to act" by employees of Defendants[11].

42. On July 3, 2023 Plaintiff signed her official EEO statement (administrative claim), which was thirty pages in length and was attested to under oath. Annexed hereto as "Exhibit K" is a copy of the Plaintiff's EEO statement.

43. Embedded in Plaintiff's original EEO statement under the Section identified as Issue 8, there is narrative paragraph that begins "[G]eneral facts to be considered in this matter include..". See Exhibit J page 27.

44. On the next page Plaintiff recounts how "in November or December of 2022 SA (REDACTED) was indefinitely suspended and walked out of the Field Office". Of course, the agent referred to was Plaintiff's FTA Mike Schmitt. Also, in her EEO statement Plaintiff indicates that she notified SAC Kowel about the lack of an FTA while she was assigned to OMFO and SAC Kowel responded by stating that it must have provided Plaintiff with a lot of learning opportunities. See, Exhibit K at page 28 in first paragraph from top of the page.

[11] While SSA Gallagher's failure to assign Plaintiff a replacement FTA (and NADP/C Stevenson's failure to flag the issue) in the fall of 2022 for the remainder of Plaintiff's probationary period (4/10/23) and each continual day that Defendants failed to assign Plaintiff a replacement FTA could be deemed a "continuing harm", it is not part of the HWE claims in this case. However, in Plaintiff's accompanying Legal Brief she spells out the need for this information in order for her to rebut Defendants' Fourth Affirmative Defense.

45. The above-referenced exchange between Plaintiff and SAC Kowel occurred in a one on one meeting with SAC Kowel in his office on March 30, 2023. Following the one hour meeting Plaintiff took contemporaneous notes of the exchange. Annexed hereto as "Exhibit L" is a copy of Plaintiff's typed contemporaneous notes. Your Honor's attention is directed to the 2nd page of Exhibit L in the 2nd paragraph from the top of the page, which captures the March 30, 2023 meeting.

46. In fact, page 20 of Plaintiff's EEO statement has a passing reference to their March 30, 2023 conversation under Issue 6, in which Plaintiff acknowledges a 1 hour meeting in which she was detailing treatment Plaintiff had been receiving from SSA Gallagher. See, Exhibit K at page 20, at the 2d paragraph from the bottom of the page.

## VI. Plaintiff's Attempts to Confer With Defendants to Resolve Discovery Dispute.

47. Plaintiff first raised her objection to the substance of #31 in an email of **May 19, 2026** to attorneys for Defendant with a subject line that reads "Colleen Peters v. Blanche, et al; Discovery update, dispute, depositions". The manner in which Plaintiff's objection reads as follows:

> "Based on the objectionable, improper, non-responsive running dialogue contained in the response to Interrogatory #31 about what SSA Foiles recalls, and what SA Ali[12] recalls and the interjection of a self-serving offering of the role of SA Florence roll (sic) was relative to the question of 'name, Sex of the FTA assigned to SA Ali during his 18 months', I am going to insist on verifications from all of these individuals to justify consideration of this response from Defendants. Which is a markedly different response to interrogatories 29 and 30 (which asks the same question)".

48. Likewise, in Plaintiff's first formal Conferral Memo to Defendants the issue of the objectionable substance of Defendants' response to #31 was made clear: that it contained non-

[12] "SA Ali" is a reference to SA Soheilian and he prefers that personnel call him "Ali" in communications.

responsive content, that it differed materially from #29 and #30, and contained gratuitous self-serving information which tended to obfuscate a more direct response. See, Exhibit B at pages 8 through 10.

49. In its May 28, 2026 Reply Letter Defendants indicated that they were reviewing Plaintiff's highlighted objections to the Interrogatory #31 and will clarify distinctions between the interrogatories (i.e., #29, #30 and #310 where appropriate. See Exhibit C at the 2nd page.

50. However, on July 7, 2026 filed its only supplemental and amended responses to Plaintiff's Interrogatories.

51. The July 10, 2026 Conference call with Magistrate Judge Nelson did not resolve the parties' discovery dispute (particularly Plaintiff's Interrogatory #31) and Defendants position during the 50+ minute call was that "nothing further was required of Defendants".

52. On the morning of August 28, 2026, the parties conducted a personal conferral pursuant to NECivR 7.1(j) through a Zoom call between the undersigned and attorneys for Defendants: AUSA Amanda Brown and AUSA John Ward to address the discovery dispute, including Plaintiff's continuing objection to Defendants #31 (interrogatory) response. The personal conferral lasted approximately 40 minutes.

53. On September 8, 2026 Plaintiff served her Third (final) Conferral Memo on Defendants. The deficiencies in Defendants' response to #31 stand out as the sole remaining objection and Plaintiff took time to use the Third Conferral Memo to submit caselaw authority to Defendants to convince a corrected response to #31. To no avail.

54. The parties' September 9, 2026 Status Conference with Magistrate Judge Nelson call addressed, inter alia, Plaintiff's continued objection to Defendants' #31. Defendants position remained unaltered. It should be noted that Defendants counsel was present for SSA Gallagher's

August 7, 2026 deposition in which SSA Gallagher contradicted the substance of Defendants #31.

55. All attempts at conferral have been exhausted (some with the able assistance of Magistrate Judge Nelson) and despite Plaintiff's multiple attempts to suggest that Defendants do not have a substantial basis in its position, this Court's intervention is sought at this stage.

Dated: September 22, 2026.

Sworn to under penalty of perjury:

*//s// Denis P. McAllister*

Attorney for Plaintiff

**NECivR Compliance Certification**

No generative artificial intelligence was used in the drafting of this document and I so certify the same to be true and correct under penalty of perjury. Furthermore, the foregoing affidavit contains 4,036 words, according to the word-processing system (Microsoft Word) used to prepare the document. Accordingly, I hereby that the word count does not exceed the 6,500 word limit.

Dated: September 23, 2026.

*//s// Denis P. McAllister*

## CERTIFICATE OF SERVICE OF AFFIDAVIT & TABLE OF CONTENTS

I hereby certify that on today's date I served Plaintiff's Affidavit in Support of her motion to Compel and Table of Contents on Defendants' attorney of record via the CM/ECF system:

AUSA Amanda Brown, Esq.
United States Attorney's Office
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Amanda.brown2@usdoj.gov

AUSA John Ward, Esq.
United States Attorney's Office
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
John.Ward@usdoj.gov

Dated: September 23, 2026.

Yours, etc.,

*/s/ Denis P. McAllister*
Denis P. McAllister, Esq.
Attorney for Complainant
70 Glen Street, Suite 395
Glen Cove, New York 11542